**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE:

KEY AUTO LIQUIDATION CENTER, INC.,                    CASE NO.:  07-30419-LMK

  Debtor.                                                                    CHAPTER:  7

_____/

## ORDER GRANTING MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE

THIS MATTER came before the Court for hearing January 24, 2008 on the Motion for Allowance of Administrative Expense (the "Motion," Doc. 298) filed by Anthony J. Ciano; Ciano Family Partnership, LLLP; Vannoy's Tires, Inc.; Gulf States Auto Auction, LLC; Fact-O-Bake of Pensacola, Inc.; and Automotive Alternative, LLC (collectively, the "Petitioning Creditors") and the objection thereto (the "Objection," Doc. 305) filed by N.A.F. Corporation; Auto Finance Center of America, Inc.; Ohio Funding Group, Inc.; and Detroit II Automobiles, Inc. (the "Objecting Creditors").

The Objecting Creditors attack the Motion on two fronts, contending that the Petitioning Creditors should not be reimbursed at all for filing and prosecuting the involuntary petition that commenced this case.  First, the Objecting Creditors argue that Anthony J. Ciano and Ciano Family Partnership, LLLP ("Ciano") did not "file" the involuntary petition within the meaning of 11 U.S.C. § 503(b)(3)(A) (2007), and therefore the costs and attorneys' fees incurred by Ciano are not allowable.  Second, the Objecting Creditors argue that Vannoy's Tires, Inc.; Gulf States Auto Auction, LLC; Fact-O-Bake of Pensacola, Inc.; and Automotive Alternative, LLC (the "Trade Creditors") did not actually incur any necessary expenses under 11 U.S.C. § 503(b)(3)(A) (2007), and therefore the request for fees and expenses by the Trade Creditors should be denied.  Thus, the Motion and Objection raise two threshold issues:  whether Ciano is a creditor that filed

1

the involuntary petition; and whether the Trade Creditors incurred actual, necessary expenses. For the reasons explained herein, I find that both Ciano and the Trade Creditors are eligible to seek the allowance of administrative expenses under § 503(b)(3)(A) and 503(b)(4).

Further, the Objecting Creditors contend that the amounts sought are excessive. Therefore, also at issue are the amounts sought for the filing of the involuntary petition. This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 151, and 157(b)(2)(A).

## *Background*

This case was commenced on May 4, 2007 pursuant to 11 U.S.C. § 303 by the filing of an involuntary petition under Chapter 7 against the Debtor. The second and third pages of the involuntary petition (Official Form 5) contain sections titled "Request for Relief" and "Petitioning Creditors," which list the names and addresses of the Trade Creditors, their signatures, and the signature of their attorney. The last page is titled "Attachment to Involuntary Petition Under Chapter 11 [sic] of the Bankruptcy Code Against Key Auto Liquidation Center, Inc." (the "Attachment"). It states in part that

> The undersigned petitioning creditors join in the involuntary petition filed against Key Auto Liquidation Center, Inc. and request that an order for relief be entered against Key Auto Liquidation Center, Inc. under chapter 7 of title 11, United States Code.

The Attachment is signed by Anthony J. Ciano, Anthony J. Ciano as Trustee of the Ciano Family Partnership, LLLP, and Ciano's attorney, and it reflects claims held by Ciano in the total amount of $325,000 for loans and $5,000 for rent. Ciano has also filed several proofs of claims totaling over $330,000 in noncontingent, unsecured claims.

The Debtor, in concert with the Objecting Creditors, strenuously opposed the entry of an order for relief. To contest the involuntary petition, the Objecting Creditors hired two large law

firms, one in Tampa, Florida and one in Ann Arbor, Michigan.  The Alleged Debtor hired a local law firm.  The Alleged Debtor and Objecting Creditors initially attempted to create disputes as to the amounts owed to the Petitioning Creditors.  However, after it became clear that there were a sufficient number of creditors holding undisputed claims exceeding the necessary amount for purposes of §303, the Alleged Debtor and Objecting Creditor changed tacks and argued that the filing of the involuntary petition had been orchestrated by Ciano in bad faith, relying heavily on the fact that Ciano was funding the prosecution of the involuntary petition.  Ciano, through his attorney, Mr. John E. Venn, Jr., and the Trade Creditors, through their counsel, Clark, Partington, Hart, Larry, Bond, & Stackhouse ("Clark, Partington"), actively prosecuted the involuntary petition.  In pursuit of an order for relief, Mr. Venn filed a Response to the Alleged Debtor's Answer to Involuntary Petition and Motion to Dismiss or Abstain (Doc. 20), a Supplement to the Trade Creditors' Motion for Summary Judgment (Doc. 21), a Response to the Alleged Debtor's Motion to Dismiss or Abstain (Doc. 33), and briefs to support his positions.  Clark, Partington moved for summary judgment, and after intense litigation the Petitioning Creditors prevailed (Doc. 81).  Relief was ordered under Chapter 7 on July 31, 2007 (Doc. 82).  *See generally In re Key Auto Liquidation Center, Inc.*, 372 B.R. 74 (Bankr. N.D. Fla. 2007).

It is clear from the record and timesheets on file that Ciano and his attorney were instrumental in filing and prosecuting the involuntary petition.  It appears that Ciano's attorney investigated the propriety of an involuntary bankruptcy and approached the law firm that was engaged by the Trade Creditors to file the petition.  Since the Alleged Debtor had 12 or more creditors, Ciano and his attorney solicited and assisted in coordinating the Petitioning Creditors to ensure there would be a sufficient number to satisfy § 303.  Ciano funded the involuntary petition.  In fact, Ciano's involvement in filing the involuntary petition provided one of the several grounds on which the Alleged Debtor and the Objecting Creditors opposed the entry of

3

an order for relief:  that it had been orchestrated in a bad faith attempt by Ciano to gain advantage in the fight for control over the Debtor.  Though it has already been determined that the involuntary petition was not filed in bad faith, *Key Auto*, 372 B.R. at 77-80, it seems that the involuntary petition would not have been filed without the involvement of Ciano and his attorney.


### *Whether the Petitioning Creditors Are Eligible to Seek Reimbursement Under § 503(b)(3)(A)*

A creditor that files an involuntary petition may seek the allowance as an administrative expense of its actual, necessary expenses.  11 U.S.C. § 503(b)(3)(A).  In addition, such entities are allowed an administrative expense for reasonable attorneys' fees.  11 U.S.C. § 503(b)(4).

The first line of attack on the Motion for Allowance of Administrative Expense is that Ciano did not file the involuntary petition.  The Objecting Creditors argue that, since Ciano joined in the petition, he did not "file" it.  The question is whether Ciano filed the involuntary petition within the meaning of § 503(b)(3)(A).

The Bankruptcy Code does not specifically identify which creditor "files" the involuntary petition for purposes of § 503(b)(3)(A).  Nonetheless, it is clear that more than one creditor can file an involuntary petition within the meaning of § 503(b)(3)(A).  *See* 11 U.S.C. § 102(7) (stating the rule of construction that "the singular includes the plural").   In addition, a coordinated effort among creditors to file an involuntary petition is implicitly required by § 303(b)(1) when the alleged debtor has 12 or more creditors.  *See In re Tichy Elec. Co., Inc.,* 332 B.R. 364, 372 (Bankr. N.D. Iowa 2005).

Moreover, after the filing of the involuntary petition but before dismissal or the entry of an order for relief, an unsecured creditor holding a claim that is not contingent "may join in the petition <u>with the same effect</u> as if such joining creditor were a petitioning creditor under

subsection (b)." 11 U.S.C. § 303(c) (emphasis added). The plain language of the Code does not place any limit on the effect of such a creditor's joinder in the petition, which indicates that a properly joining creditor, like Ciano, is deemed to be a "petitioning creditor" for all purposes.

Though § 503 should be narrowly construed in order to maximize the distribution to creditors, *see, e.g., In re Hanson Industries, Inc.,* 90 B.R. 405, 409 (Bankr. D. Minn. 1988), its purpose should not be ignored. *See Kelly v. Robinson,* 479 U.S. 36, 43-44 (1986) (stating that a law's "object and policy" should be considered when construing a statute). The purpose of §§ 503(b)(3)(A) and 503(b)(4) is to reimburse petitioning creditors for the costs associated with successfully filing and prosecuting an involuntary petition—a valuable service that brings the debtor into court so that its assets can be equitably marshaled before they are squandered. *In re J.V. Knitting Service, Inc.*, 22 B.R. 543, 545 (Bankr. S.D. Fla. 1982); *In re Adam Furniture Industries, Inc.,* 1993 WL 13004589, *3 (Bankr. S.D. Ga. 1993) (unpublished); *see also Hanson Industries*, 90 B.R. at 410 (stating that the purpose of allowing petition creditors their fees and costs is to encourage them to successfully bring the debtor into court so that its assets can be equitably distributed).

Furthermore, the Code already discourages the filing of frivolous or nonmeritorious involuntary petitions. *See* 11 U.S.C. § 303(i) (providing that unsuccessful petitioning creditors may be liable for the alleged debtor's costs and attorney's fees, plus damages and punitive damages if the petition was filed in bad faith). Section 503(b)(3)(A) should not therefore be interpreted in a way that imposes an additional deterrent to creditors filing involuntary petitions. *See Adam Furniture,* 1993 WL 13004589 at *3; *see also In re Baldwin-United Corp.,* 79 B.R. 321, 337 (Bankr. S.D. Ohio 1987).

Given the plain language and purpose of §§ 503(b)(3)(A) and 503(b)(4), I find that Ciano "filed" the petition within the meaning of § 503(b)(3)(A). "[T]he controlling criteria for judging

any particular interpretation of § 503(b)(3)(A) is whether that interpretation will render the creditor whole in the sense of the expense it incurred in successfully bringing the debtor into the bankruptcy court." *Adam Furniture*, 1993 WL 13004589 at *3.   While the argument of the Objecting Creditors is clever and superficially appealing at first blush, such appeal rapidly diminishes when the facts and the law are more closely scrutinized.   As reflected in the timesheets that were filed with the Motion, Ciano's attorney researched the legal and factual propriety of initiating and pursuing the entry of an order for relief under § 303, solicited and organized the Petitioning Creditors, and assisted in preparing joinders for other petitioning creditors.  In addition, Ciano's attorney played a large if not predominant role in prosecuting the involuntary petition; he responded to the motion to dismiss, filed memoranda and supplements to the pleadings, appeared in court to prosecute the involuntary petition, and responded to discovery requests, all of which were necessary only because the Debtor and Objecting Creditors adamantly opposed the entry of an order for relief.  The nature of the expenses Ciano incurred are of the type that §§ 503(b)(3)(A) and 503(b)(4) were intended to compensate, and Ciano has performed a valuable service for the creditors and the estate by bringing the Debtor into court so that its assets would not be dissipated.  Under these circumstances, the fact that Ciano signed his name on a joinder that was attached to the petition rather than signing his name in the same section of the petition as the other Petitioning Creditors should not preclude the allowance as an administrative expense of the costs he incurred in preparing and prosecuting the involuntary petition.  To hold otherwise would elevate form over substance.

   Similarly, the Trade Creditors' expenses should not be disallowed merely because Ciano agreed to pay them.  The Objecting Creditors argue that the Trade Creditors did not "incur" any "actual, necessary expenses" because Ciano agreed to pay those expenses.  Once again, the Objecting Creditors are attempting to parse the statue by reading single words in isolation.  The

well-established principles of statutory construction do not support such a reading.  *See Kelly v. Robinson,* 479 U.S. 36, 43-44 (1986) (stating that a single sentence or member of a sentence should not control the endeavor of expounding statutes).  The fact that a third party agrees to pay one's expenses does not mean that those expenses were unnecessary or never actually incurred. Here, the Trade Creditors actually incurred expenses that were reasonably necessary for preparing, filing, and prosecuting the involuntary petition.  Accordingly, those expenses are compensable as administrative expenses under §§ 503(b)(3)(A) and 503(b)(4), the fact that Ciano essentially agreed to cover them notwithstanding.


### *The Compensability of the Amounts Sought*

Having determined that Ciano and the Trade Creditors may be reimbursed under §§ 503(b)(3)(A) and 503(b)(4), I next consider the compensability and reasonableness of the specific amounts sought.  In making the determinations that follow I have considered the reasonableness of the amounts requested using the factors laid out in 11 U.S.C. § 330 and *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

Petitioning creditors may seek the fees and costs directly related to preparing the involuntary petition and pursuing it to successful conclusion.   §§ 503(b)(3)(A) and 503(b)(4); *Hanson Industries,* 90 B.R. at 410; *In re Crazy Eddie, Inc.,* 120 B.R. 273, 277-78 (Bankr. S.D.N.Y. 1990).  Attorney's fees may be recovered under §§ 503(b)(3)(A) and 503(b)(4) for preparing and filing the involuntary petition, contacting other creditors to join in the petition, legal and factual research regarding the grounds for filing the case, and litigating whether an order for relief should be entered.  *In re Westek Georgia, LLC,* 317 B.R. 567, 570 (Bankr. M.D. Ga. 2004) (quoting  *Collier on Bankruptcy,* ¶ 503.10[2][b] at 503-61 (15th ed. rev. 2004)).  These amounts are subject to a reasonableness review mirroring that of § 330. *In re Stoecker*, 128 B.R. 205, 209

(Bankr. N.D. Ill. 1991).  The "cut-off point" for administrative expenses under §§ 503(b)(3)(A) and 503(b)(4) is the entry of an order for relief.  *In re Hall*, 373 B.R. 788, 794-95 (Bankr. S.D. Ga. 2006) (quoting  *Collier on Bankruptcy,* ¶ 503.10[2][b] (15th ed. rev.)).

The Petitioning Creditors have conceded that fees for services provided after the entry of the order for relief are not compensable under § 503(b)(3)(A), and therefore post-relief fees in the amount $3,027.50 will be disallowed.

The Objecting Creditors have argued that the Petitioning Creditors are seeking reimbursement for expenses unrelated to the filing and prosecution of the involuntary petition. Based on the timesheets and case file, it appears that neither the Trade Creditors nor their law firm, Clark, Partington, were involved in the pre-petition wrangling for control over the Debtor in the District Court.  While the time entries for Clark, Partington were not specifically identified as related to the involuntary, the context of the time entries show that they did not become involved in this case until less than a month before the filing of the involuntary petition, and it appears that the only involvement of Clark, Partington in this case was related to the representation of the Trade Creditors in preparing, filing, and prosecuting the involuntary petition.  Therefore all of the fees sought by Clark, Partington up to the entry of the order for relief will be allowed.

However, it appears that the attorney for Ciano, Mr. John E. Venn, Jr., was involved at least to some extent in the District Court litigation for control over the Debtor or the exploration of nonbankruptcy alternatives to the involuntary petition.  These services were not directly related to the involuntary petition.  Though pre-petition investigation and research into the propriety of filing the involuntary petition are compensable, *Crazy Eddie*, 120 B.R. at 277; *In re Baldwin-United Corp.,* 79 B.R. 321, 337 (Bankr. S.D. Ohio 1987), "the time spent attempting an unsuccessful pre-bankruptcy workout is not allowed as those services are not compensable under

8

the statute," *Stoecker*, 128 B.R. 205 at 212.  Based on their description and context in the timesheets, the entries in Table A of the attached Appendix will be disallowed because they appear to relate to the pre-petition fight for control over the Debtor or the exploration of nonbankruptcy alternatives rather than investigation and research related to the preparation or filing of the involuntary petition.  The total amount disallowed in Table A is $3,322.50.

The time spent on actions within the bankruptcy case that are not directly related to the prosecution of the involuntary petition or the preservation of the estate are not compensable under §§ 503(b)(3)(A) and 503(b)(4).  *See Crazy Eddie*, 120 B.R. at 278; *In re Seatrain Lines, Inc.,* 21 B.R. 194, 195 (Bankr. S.D.N.Y. 1982).  The description and context of the time entries in Table B in the attached Appendix indicate that they have to do with issues that are not directly related to pursing the entry of an order for relief or preserving the estate and therefore will be disallowed.  The total amount disallowed in Table B is $1,240.00.

In addition, "the time spent conferring with non-petitioning creditors produced no demonstrable benefit to the estate and thus is not compensable."  *Stoecker*, 128 B.R. 205 at 212.  As the time entries in Table C of the attached Appendix appear to relate to time spent conferring with non-petitioning creditors, they will be disallowed.  The total amount disallowed in Table C is $320.00.

The Objecting Creditors have argued that some of the time entries are so vague that it is impossible to determine whether they are related to the involuntary petition at all.  I disagree. The requirement that entries on timesheets be made in a manner that allows review by the court should not "impose slavish and overburdensome record-keeping requirements which, in the final analysis, result in fee applications of such enormous length and detail that they are of little ultimate value to the Court in awarding fees."  *In re Frontier Airlines, Inc.,* 74 B.R. 973, 976 (Bankr. D. Colo. 1987).  As long as counsel makes a "reasonable effort to submit meaningful

billing records from which . . . an informed evaluation of the nature, reasonableness and value of the services which have been provided" can be made, the time records are sufficient. *Id.* In this case, the entries in the time sheets are sufficiently specific when viewed in context to allow evaluation of their necessity and reasonableness.

The Objecting Creditors have asserted that fees incurred for post-petition settlement discussions that would have resulted in the dismissal of the involuntary petition should not be allowed. Though unsuccessful pre-petition attempts at a nonbankruptcy workout are not compensable, *Stoecker*, 128 B.R. 205 at 212, a distinction must be made from post-petition attempts to reach settlement. After the petition is filed an estate is created, 11 U.S.C. § 541, and the interests of all creditors are protected. Any settlement would require court approval. *See* 11 U.S.C. § 303(j) (requiring notice and a hearing before dismissal on motion of a creditor, all creditors, or for want of prosecution). Given that the interests of all creditors are accounted for after the petition is filed, fees for the time expended attempting to reach a settlement should not be disallowed. Disallowing such fees would discourage settlements, which is inconsistent with public policy because a post-petition settlement can conserve judicial resources by obviating the need for deciding the merits of the involuntary petition while still achieving the results the Code is intended to accomplish.

The Objecting Creditors have also objected to certain of the fees sought as being duplicative. However, "[t]he mere fact that several attorneys are representing petitioning creditors does not foreclose an award of administrative expenses to each of them, so long as there is a definite effort to avoid duplicative work and to represent all petitioning creditors on an efficient basis." *Hanson,* 90 B.R. at 412. The Objecting Creditors hired two law firms to oppose the involuntary petition—one large firm in Tampa, Florida and one large firm in Ann Arbor, Michigan. In addition, the Debtor hired a law firm in Pensacola, Florida. Given the complexity of the

litigation and the sophistication of the opposition, it was not at all unreasonable for Ciano's attorney, Mr. Venn—a sole practioner, to confer with a moderately sized local law firm in pursuing the petition.   Furthermore, it appears that the employment of Clark, Partington was necessary in order to avoid a potential conflict of interest between Ciano and the Trade Creditors. The time records indicate that an effort was made to represent the Petitioning Creditors efficiently and to avoid duplicative work.   Therefore, I find that the fees sought are not duplicative and will not be reduced on that basis.

Accordingly, it is hereby

ORDERED and ADJUDGED that the Petitioning Creditors' Motion for Allowance of Administrative Expense (Doc. 298) is GRANTED in part.   Ciano is allowed $924.45 under § 503(b)(3)(A) and $23,712.50 under § 503(b)(4), and the Trade Creditors are allowed $1,653.63 under § 503(b)(3)(A) and $20,127.50 under § 503(b)(4).

DONE and ORDERED in Tallahassee, Florida this 19th day of March 2008.

LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc:  all parties in interest

**APPENDIX**

*Table A*

| Date | Description | Rate | Hours | Cost |
|------|-------------|------|-------|------|
| 03/30/07 | Phone call with other attorney – Litvak re: corporate records. | 250.00 | 0.20 | 50.00 |
| 03/30/07 | Legal Research re: dissolution and receivership. | 250.00 | .50 | 125.00 |
| 04/01/07 | Legal Research re: miscellaneous issues relating to LLC's. | 250.00 | 1.50 | 375.00 |
| 04/01/07 | Preparation of notice of special meeting of LLC's members. | 250.00 | 0.70 | 175.00 |
| 04/01/07 | Conference with client re: notice of special meeting, etc. | 250.00 | .30 | 75.00 |
| 04/01/07 | Phone call with Alan Siskind re: filing for receivership, etc. | 250.00 | .20 | 50.00 |
| 04/01/07 | Legal Research re: rights of transferee of member of LLC. | 250.00 | 1.90 | 475.00 |
| 04/03/07 | Preparation for meeting with Litvak & Beasley re: issues and alternatives. | 250.00 | 0.50 | 125.00 |
| 04/03/07 | Conference with other attorney – Litvak & Beasley re: issues and alternatives. | 250.00 | 1.50 | 375.00 |
| 04/04/07 | Letter to other attorney – Raymond re: out of court work out. | 250.00 | 0.60 | 150.00 |
| 04/04/07 | E-Mail to – Hammer. | 250.00 | 0.30 | 75.00 |
| 04/06/07 | Phone call with client re: call from Foss and settlement parameters. | 250.00 | 0.20 | 50.00 |
| 04/06/07 | E-Mail to other attorney – Hammer. | 250.00 | 0.50 | 125.00 |
| 04/11/07 | Attendance at meeting re: LLC | 250.00 | .20 | 50.00 |
| 04/11/07 | [Dissallowed to the extent of time spent conferencing on "alternatives"] | 250.00 | .75 | 187.50 |
| 04/12/07 | Phone call with client re: letter from Horvath terminating Siskind, etc. | 250.00 | 0.20 | 50.00 |
| 04/17/07 | Phone call with client re: Horvath at Bank of Pensacola | 250.00 | 0.20 | 50.00 |
| 04/20/07 | Phone call with client re: notice of meeting, etc. | 250.00 | 0.20 | 50.00 |
| 04/24/07 | Conference with other attorney – Beasley, et al re: status, alternatives, and things to do | 250.00 | 2.20 | 550.00 |
| 05/02/07 | Phone call with other attorney – Bates re: Horvath's contacts with Bank of PNS. | 200.00 | 0.30 | 60.00 |
| 05/02/07 | Investigation – re: SEC filings for CAC | 200.00 | 0.50 | 100.00 |
|  | TOTAL: |  |  | 3,322.50 |

*Table B*

| Date | Description | Rate | Hours | Cost |
|------|-------------|------|-------|------|
| 05/02/07 | Preparation of complaint to guaranty fees | 200.00 | 0.20 | 40.00 |
| 05/02/07 | E-Mail to – Ted re: fees to Bond | 200.00 | 0.20 | 40.00 |
| 05/05/07 | Investigation – research on UCC's | 200.00 | 0.50 | 100.00 |
| 05/05/07 | Investigation – research on new resident agent for KALC | 200.00 | 0.30 | 60.00 |
| 06/07/07 | Review of Ohio Funding lawsuit – recent filings. | 200.00 | 1.00 | 200.00 |
| 06/18/07 | Phone call with Siskind re: hearing in Miami. | 200.00 | 0.20 | 40.00 |
| 06/19/07 | Letter to other attorney – Kaufman re: Ohio Funding. | 200.00 | 0.20 | 40.00 |
| 05/31/07 | Review of pleadings in federal court lawsuit | 200.00 | 0.80 | 160.00 |
| 06/25/07 | Phone call with Siskind re: change of management of Ohio Funding. | 200.00 | 0.20 | 40.00 |
| 06/26/07 | Phone call with client re: contract on Milton store. | 200.00 | 0.20 | 40.00 |
| 06/27/07 | Phone call with other attorney – Farrington re: Roche contract and deadlines. | 200.00 | 0.30 | 60.00 |
| 06/28/07 | Phone call with other attorney – Hammer re: termination of lease. | 200.00 | 0.20 | 40.00 |
| 06/29/07 | Phone call with other attorney – Hammer re: lease. | 200.00 | 0.20 | 40.00 |
| 06/29/07 | E-Mail to – everyone re: termination on lease. | 200.00 | 0.20 | 40.00 |
| 07/09/07 | Phone call with other attorney – Beasley re: termination of lease. | 200.00 | 0.20 | 40.00 |
| 07/09/07 | E-Mail to – Thames re: termination of lease. | 200.00 | 0.20 | 40.00 |
| 07/10/07 | E-Mail to – Hammer re: termination of lease. | 200.00 | 0.20 | 40.00 |
| 07/10/07 | Revision of motion re: termination of lease. | 200.00 | 0.20 | 40.00 |
| 07/11/07 | E-Mail to – Thames re: motion. | 200.00 | 0.10 | 20.00 |
| 07/11/07 | E-Mail to – Lane re: motion to terminate lease. | 200.00 | 0.10 | 20.00 |
| 07/26/07 | Attendance at hearing re: motion to withdraw | 200.00 | 0.30 | 60.00 |
|  | TOTAL: |  |  | 1,240.00 |

*Table C*

| Date | Description | Rate | Hours | Cost |
|------|-------------|------|-------|------|
| 06/14/07 | Phone call with other attorney – Aventura's attorney. | 200.00 | 0.30 | 60.00 |
| 06/25/07 | Phone call with Siskind re: encouraging Aventura to join involuntary. | 200.00 | 0.20 | 40.00 |
| 06/29/07 | Letter to other attorney – Craig Waltzer. | 200.00 | 0.30 | 60.00 |
| 06/29/07 | E-Mail to – to Jere Lane. | 200.00 | 0.80 | 160.00 |
| | TOTAL: | | | 320.00 |